IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRYAN STRICKLAND, & | ) | BANKRUPTCY CASE NUMBER: |
| PENNY STRICKLAND, | ) | 04-12801 |
| | ) | CHAPTER 13 CASE |
| DEBTORS. | ) | |

***

| | | |
|---|---|---|
| BRYAN STRICKLAND, & | ) | |
| PENNY STRICKLAND, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | A.P. NUMBER: 09-1080 |
| | ) | |
| HOUSEHOLD FINANCE | ) | |
| CORPORATION OF ALABAMA, & | ) | |
| HSBC MORTGAGE SERVICES, INC., | ) | |
| f/k/a HOUSEHOLD FINANCIAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## PLAINTIFFS' MOTION TO COMPEL PURSUANT TO RULE 37

COMES NOW the plaintiffs and moves Your Honor for an Order compelling the defendant to respond to certain discovery and to make available certain witnesses for the purposes of discovery in this action. In support of this motion and as grounds therefore, the plaintiffs state as follows:

1. This lawsuit was filed in October of 2009.

2. The Court previously entered a scheduling Order requiring that discovery in the matter be completed by May 10, 2010.

3. The Plaintiffs propounded interrogatories and request for production to the defendants which were due for answer originally in March of 2010.

4. Counsel for the defendants requested and was granted an extension to provide answers to discovery originally until March 31, 2010 (see attached letter from Hon. Rashad Blossom as exhibit A).

5. Further requests for extensions of time to respond to discovery were granted based upon the assurance of counsel that his client was attempting to fully respond to the discovery requests in the case. See attached exhibit B which is an email from Defendant's counsel confirming an agreement to extend his time to respond.

6. Once the discovery requests were received undersigned counsel communicated both via phone call and in writing that the discovery responses in the case were "non-responsive" and requested corrective actions by the Defendant to avoid a motion to compel (see attached exhibit C, letter from plaintiffs counsel to defendants counsel on April 20, 2010 with redactions of settlement discussions)

7. The parties communicated several times leading up to the planned 30b6 deposition of the Defendant on May 5, 2010 with the Defendant's counsel repeatedly assuring counsel for the Plaintiff that the defendant was searching for documents which would be produced prior to the deposition of the Defendant.

8. In furtherance of these issues undersigned counsel wrote counsel for the Defendant on May 3, 2010 regarding the material deficiencies still outstanding from the discovery produced by the Defendants. This letter is attached as exhibit D.

9. The defendants further supplemented their discovery on both May 3 and May 4 2010 with additional production.

10. Despite these further document productions, the defendants were unable to produce relevant and material documents which substantially prejudiced the Plaintiffs' ability to prove their case.

11. Examples of the types of documents which were not produced by the defendants include

    a. The life of loan transaction complete with the codes for each transaction along with a definitional library of those codes. This document is relevant because the defendant produced two life of loan histories which had been transferred to a spreadsheet format (and away from its native electronic format) and the history of the fees and charges assessed to the plaintiffs loan account was

vastly different between the two documents. Both documents were intended to be life of loan histories for the Plaintiffs' account. Both documents were populated using computer "scripts" or programs but one document suppressed many of the fees and charges assessed to the borrowers loan history and the other did not. These contradictory documents cannot be relied upon to accurately portray the accounting of the defendants for the payments by the debtors without reviewing the native life of loan data along with the codes which explain those actions by the Defendants.

b. The material agreements between the defendant and its vendors and contractors setting forth the charges paid for fees assessed to the plaintiffs' account to determine if those charges have been increased or marked up.

c. The complete production from the LPS desktop system of the process management notes which explain step by step the actions taken by the defendants while managing the Plaintiffs' loan during the time it has been involved in the underlying bankruptcy.

d. The images from the LPS desktop system setting forth the documents and scans which have been uploaded regarding the plaintiffs' account.

e. The images from the "image management" module of the LPS desktop system.

f. The invoices which are actually scanned into the "invoice management" module of the LPS desktop system relating to charges to the Plaintiffs' account which have not been previously disclosed or approved by the Bankruptcy Court.

g. Any contracts between the defendants and any investors in the Plaintiffs' loans which require as a term of those agreements that the servicer undertake certain actions with respect to a borrower's account based upon the servicer's stated delinquency on the loan (such as impose a BPO or a property inspection fee).

    h. Any contracts or agreements for compensation or referral of force placed insurance between the Defendants and the entities which they selected to charge force placed insurance to the plaintiffs' account.

    i. Further, the deponent produced by the defendants could not answer many of the questions regarding the Plaintiffs loan account, principally among them was the question of whether the defendants software system tracks the contractual date of delinquency for the purposes of automatically assessing certain fees and charges to the borrowers account irrespective of their status in bankruptcy. The deponent also could not answer whether the defendant treats the borrowers loan as delinquent during the period of the Chapter 13 plan for the purpose of tracking and charging fees and costs.

12. Counsel for the plaintiffs has attempted to negotiate with the counsel for the defendant regarding this material and to accommodate the defendant's efforts to produce the needed data. Counsel granted several voluntary extensions and made every effort to work with the defendant including allowing many of the documents produced to be produced on the very eve of deposition. However, the production is incomplete and prejudices the Plaintiffs rights to discovery in the case and has negatively impacted their ability to go forward with their case.

13. Counsel for the plaintiff believes that defendant's counsel, Hon. Rashad Blossom, has worked to gather the requested material but has been frustrated in those efforts by the inability of the Defendant to make the production in accordance with the requests by the plaintiffs.

14. Because of the discovery cutoff in this case (May 10, 2010) the plaintiffs have been thwarted in their efforts to complete the depositions in this case and gather the requested documents because of the Defendants actions. Further, without an order from the Court requiring the defendant to produce its witnesses for further testimony and produce the remaining discovery items the Plaintiffs case will be irreparably damaged.

15. To remedy the discovery failures of the defendant, the plaintiffs propose that the Court order that Discovery be extended and that the defendants answer fully the plaintiffs' consolidated discovery and further order the defendants to produce witnesses in Birmingham, Alabama at the defendant's counsel's office for further deposition testimony.

16. In the alternative, the Plaintiffs request an appropriate sanction for failing to make discovery which will vindicate the Plaintiffs' rights to have discovery in the case and protect the Plaintiffs from unfair prejudice because of the defendants' inability or unwillingness to comply with discovery.

17. Counsel for the plaintiff certifies to the Court that he has made a good faith effort to resolve these disputes without the necessity of Court intervention and has received a good deal of cooperation from the defendant but felt that he had to file this motion to vindicate his clients' rights to discovery given the short time to the discovery cutoff.

18. Counsel has attached the answers to discovery by the Defendants as Exhibit E to this motion.

WHEREFORE, PREMISES CONSIDERED, the plaintiffs pray that this Court will grant the motion to compel and make such orders as are necessary to effect justice in the case.

Done and filed this the 7th day of May 2010.

       /s/ Nick Wooten
       Nick Wooten
       Attorney for the Plaintiffs

# CERTIFICATE OF SERVICE

**I hereby certify that on the 7th day of May 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: All counsel of record.**

Household Finance Corporation of Alabama & HSBC Mortgage Services, Inc., f/k/a Household Financial Services, Inc.

Rashad Blossom, Esq.
BRADLEY, ARANT
BOULT & CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Email: rblossom@babc.com

                                                    s/ Nick Wooten_____
                                                    Of Counsel

# EXHIBIT 1

## INSTRUCTIONS AND DEFINITIONS

**Definitions**

  A. The term "document" includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written and/or produced by hand: ledgers; notes; correspondence; communications of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; reports; publications; photographs; microfilm, microfiche, and similar media; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; court papers; brochures; pamphlets; press releases; drafts of, or revisions of drafts of, or translations of, any document; tape recordings; dictation belts; invoices; bills; accounting records; telephone toll records; and disks, tapes, and other magnetic or electronic information storage media. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation initials, stamped indicia, any comment or any notation of any character and not a part of the original text, is to be considered a separate document.

  B. References to "you" or any named entity or individual include agents, employees, and attorneys of that person, whether or not acting within the scope of their authority; all other persons acting on behalf of the person referred to; and in the case of an entity, its merged or acquired predecessors.

  C. "Person" includes any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, or commission, or other entity.

  D. "Identify" or "identification," when used with respect to a person, means to state the name, last known address, telephone number, and if a corporation or other entity, the principal place of business of the person.

  E. "Identify" or "identification," when used with respect to a document, means to state the general nature of the document (i.e., letter, memorandum, etc.); the name of the author or originator; each addressee; all individuals designated on the document to receive a copy or otherwise known to have received a copy; the date, title, and general subject matter of the document; the present custodian of each copy thereof and the last known address of each such custodian; and the date of the making of the document.

  F. "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

  G. "Identify" or "identification," when used with respect to a communication, means to state the date of the communication; the type of communication (i.e., telephone conversation, meeting, etc.); the place where the communication took place; the identification of the person who made the communication; the identification of each person who received the communication and of each person present when it was made; and the subject matter discussed.

  H. "Relates" includes constitutes, describes, discusses, reflects, refers to, and logically pertains to.

  I. "Act" as used herein includes acts of every kind and description.

  J. "Describe" or "State" as used herein mean:
    a) Describe or state fully by reference to underlying facts rather than by ultimate facts or conclusions of law;
    b) Particularize as to the:
      i) Time;
      ii) Date;

       iii) Manner; and,
       iv) Place.

  K. "Oral communication" as used herein means and includes any face-to-face conversation, meeting, conference, telephone conversation, cell-phone conversation, computer conversation with voicemail, or any one or more of these or related devices.

  L. "The transaction" or "The transactions" or "Account" or "Accounts" when used herein without qualification means the transaction and account between or among the Plaintiffs and the named Defendant and all related activities and agents or assigns of either party.

**Instructions**

1. All documents within your possession, custody, or control or that of your agents, employees, and attorneys shall be produced. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person having actual possession thereof.

2. To the extent any paragraph is objected to, please set forth all reasons for your objection.

3. If you prefer, you may provide legible copies of document that reflect all markings, notations, and highlighting on the originals.

4. Documents to be produced shall be either (1) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the request for production.

5. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

6. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them.

7. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given their broadest possible meaning.

8. If you are producing a document, you need not provide the information specified in paragraph E with respect to that document.